# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6643 | **DATE** | 1/20/2004 |
| **CASE TITLE** | Preussag International Steel vs. Ideal Steel and Builders' Supplies | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendant's motion to dismiss (3-1) for lack of personal jurisdiction is denied. Its motion to transfer (3-2) this action to the Eastern District of Michigan is granted. The Clerk of the Court is directed to transfer the above cause of action to the U.S. District Court for the Eastern District of Michigan. The status hearing and/ or ruling date of 1/22/04 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 21 2004 date docketed | |
| | Docketing to mail notices. | | | 12 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | 1/20/2004 | |
| | | '04 JAN 20 PM 3:23 | date mailed notice | |
| GL | courtroom deputy's initials | | GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PREUSSAG INTERNATIONAL STEEL )
CORP., d/b/a INFRA-METALS CO., )
                                )
            Plaintiff,           )
                                )
     v.                          )   Case No. 03 C 6643
                                )
IDEAL STEEL AND BUILDERS'        )
SUPPLIES, INC.,                  )
                                )
            Defendant.           )

**DOCKETED**
**JAN 2 1 2004**

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff, Preussag International Steel Corporation, doing business as Infra-Metals Company ("Infra-Metals") filed a two-count complaint against Defendant Ideal Steel and Builders' Supplies, Inc. ("Ideal Steel") alleging breach of contract and quantum meruit. Ideal Steel moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the alternative, for transfer of venue to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, Ideal Steel's motion to dismiss for lack of personal jurisdiction is denied. Its motion to transfer to the Eastern District of Michigan is granted.

## STANDARD OF REVIEW

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) based on lack of personal jurisdiction, plaintiff bears the burden of showing the existence of personal jurisdiction. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). In determining whether this court has personal jurisdiction over the defendant, we may receive and consider affidavits and other materials submitted by the parties. *See Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). The court resolves factual disputes in plaintiff's favor but may accept as true those facts presented in defendant's affidavits



that remain uncontested by plaintiff. *RAR*, 107 F.3d at 1275. Based on the parties' submissions, the facts relevant to the motion are as follows.

## BACKGROUND

Plaintiff Infra-Metals is a Georgia corporation but is registered to do business in Illinois. Its Central Division office is located in Marseilles, Illinois. Defendant Ideal Steel is a Michigan corporation with its principal places of business in Howell and Hamburg, Michigan. According to the complaint, Infra-Metals is one of the largest suppliers of structural steel in the United States. The company operates numerous distribution centers, including the two that are involved in this dispute, located in Marseilles, Illinois and East Chicago, Indiana. Ideal Steel is in the business of fabricating and reselling steel and other building materials.

According to the complaint, between June 6, 2002 and March, 2003, Ideal Steel, through its agents, ordered approximately $50,000 worth of steel from Infra-Metals' East Chicago, Indiana facility to be shipped to its Howell, Michigan location. Between December 30, 2002 and April 18, 2003, Ideal Steel ordered approximately $150,000 worth of steel from Infra-Metals' Marseilles, Illinois facility to be shipped to Howell, Michigan. Finally, between December 30, 2002 and February 3, 2003, Ideal Steel, through its agents, ordered approximately $40,000 worth of steel from Infra-Metals to be used on a project at Michigan Hazel Park Junior High School. (Compl. ¶ 19). Infra-Metals asserts it delivered, and Ideal Steel accepted, each of these shipments. Ideal Steel did not reject the steel provided, object to the quality of the steel, or dispute the amounts owed for the steel. Infra-Metals contends it issued, and Ideal Steel received, numerous invoices for the steel deliveries, and that Infra-Metals subsequently made several demands to Ideal Steel to pay the amounts past due. Infra-Metals claims Ideal Steel has refused to pay for $249,522.15 worth of steel it delivered to Ideal Steel. (Compl. ¶ 25).

## DISCUSSION

### I. Personal Jurisdiction

In a case based upon diversity of citizenship, a federal court sitting in Illinois may exercise personal jurisdiction over a nonresident defendant only to the extent that an Illinois court could do so. *See Michael J. Neuman & Assoc., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir. 1994). Under Illinois law, to exercise personal jurisdiction over a nonresident party, the court must determine that the exercise of such jurisdiction complies with the Illinois long-arm statute, the Illinois state constitution, and federal due process. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).

The Illinois long-arm statute permits the exercise of jurisdiction by an Illinois court on any basis permitted by the state or federal constitution. 735 Ill. Comp. Stat. 5/2-209(c); *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000). Therefore, the analysis is collapsed into a two-part inquiry based on the Illinois Constitution and federal constitutional law. *RAR*, 107 F.3d at 1276.

Under the Illinois Constitution, a court may exercise personal jurisdiction "only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990). The Illinois Supreme Court has stated that this standard offers protections independent from those offered by the federal due process clause. *Id.* As the Seventh Circuit has explained, however, Illinois courts "have given little guidance as to how state due process protection differs from federal protection in the context of personal jurisdiction." *RAR*, 107 F.3d at 1276; *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (explaining there is "no operative difference between the limits imposed by the Illinois Constitution and the federal limitations

on personal jurisdiction."). Some Illinois courts have upheld personal jurisdiction under the Illinois Constitution "over a non-resident corporate purchaser engaged in a commercial relationship with an Illinois corporation through the placing of purchase orders to the plaintiff in Illinois for products manufactured in Illinois." *RAR*, 107 F.3d at 1276 (quoting *Autotech Controls Corp. v. K.J. Elec. Corp.*, 256 Ill. App. 3d 721, 727 (1993)); *see also G.M. Signs, Inc. v. Kirn Signs, Inc.*, 231 Ill. App. 3d 339, 343 (1992) (finding personal jurisdiction existed over an active nonresident purchaser who initiated and negotiated an ongoing commercial relationship with an Illinois seller). In both *Autotech* and *G.M. Signs*, the courts distinguished between "'passive purchasers,' who merely place orders at the seller's price as stated in advertising or other forms of solicitation, and 'active purchasers,' who dictate or vigorously negotiate contract terms or inspect production facilities." *G.M. Signs*, 231 Ill. App. 3d at 343.

Ideal Steel contends that it is a passive buyer like the defendants in *Chalek v. Klein*, 193 Ill. App. 3d 767 (1990). In *Chalek*, the defendants (individuals located in California and New York) read an advertisement for plaintiff's software, inquired via telephone about the software, and then placed their respective orders for the software with the plaintiff, a company located in Illinois. One defendant placed his order over the telephone and mailed a check to Illinois; the other mailed an order form and check to Illinois. *Id.* at 769. Both defendants were unsatisfied with the merchandise, returned it to Illinois, and stopped payment on their checks. *Id.* The court, applying the active/passive purchaser distinction, found that the record demonstrated that both defendants were "classic passive purchasers" who merely ordered a product from an Illinois business. *Id.* at 773. Ideal Steel argues that, as in *Chalek*, it placed orders over the telephone and did not negotiate any terms or conditions of the agreement. According to defendant, no Ideal Steel employee or representative ever visited Illinois to inspect plaintiff's facilities or to discuss the orders. (Venegas Aff. ¶¶ 15-21). Ideal Steel asserts that it was Mike Dean, an Infra-Metals representative from Michigan who initiated the relationship between the parties in 2000.

4

(Venegas Aff. ¶¶ 13-14). Infra-Metals does not specifically contest that it was the party who initiated contact, but asserts that it did not employ Mike Dean until December 2002, and that Ideal Steel and Infra-Metals were "conducting business . . . prior to Mr. Dean's employment with Infra-Metals." (Laudani Aff. ¶¶ 6-7). Infra-Metals also responds that Ideal Steel regularly contacted Infra-Metals in Illinois via telephone, sent written correspondence to Illinois in order to discuss or dispute invoices, negotiate credits for steel previously provided, and to discuss the execution of lien waivers for steel provided by Infra-Metals and used by Ideal Steel. (Response, at 7; Laudani Aff. ¶ 4). Drawing all inferences in favor of plaintiff, we find that Ideal Steel was more than the classic passive purchaser as discussed in *Chalek* and thus it appears we may exercise personal jurisdiction over Ideal Steel under Illinois due process requirements. However, given that Illinois courts have not provided much guidance in determining when it is "fair, just, and reasonable" to subject a nonresident defendant to personal jurisdiction in Illinois, we turn to the federal constitutional analysis for additional guidance. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997).

The Due Process Clause of the Fourteenth Amendment permits an Illinois court to exercise jurisdiction over a nonresident defendant if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). We must determine if defendant has "purposefully established minimum contacts with the forum State" and consider whether those contacts would make personal jurisdiction fair and reasonable. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir. 2002) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 476 (1985)). Defendant should "reasonably anticipate being haled into court" when defendant has "purposefully avail[ed] itself of the privilege of conducting activities" in the forum state. *Id.* (quoting *Burger King*, 471 U.S. at 474-75). Although contracting with an in-state party is

5

alone not enough to establish minimum contacts, "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' must indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Id.* (quoting *Burger King*, 471 U.S. at 479). The meaning of the standard depends on whether the state asserts general or specific jurisdiction over defendant. *RAR*, 107 F.3d at 1277.

General jurisdiction is permitted only where the defendant has "continuous and systematic general business contacts" with the state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). In this case, in its discussion of minimum contacts, Infra-Metals argues that Ideal Steel has several Illinois contacts, including dealings with Illinois vendors, telephone calls to Illinois businesses, attendance at a trade fair in Chicago, and performance of work on at least five projects in the Chicago area. (Response, at 7). Infra-Metals does not assert that any of these activities are related to its relationship with Ideal Steel or the contract in dispute in this action. As such, these contacts are not relevant to our specific jurisdiction analysis. Although Infra-Metals does not specifically address general jurisdiction in its response, it appears as though Infra-Metals is attempting to establish that Ideal Steel has general business contacts with Illinois. Defendant asserts that many of the businesses identified in the materials obtained by Infra-Metals in limited discovery are companies that "merely process payments or are mail order companies . . . like American Express, AT & T, . . .[or] the Jelly Belly Candy Company." (Reply, at 1-2). Moreover, defendant argues it has never "'worked' on any construction project in Chicago" and the "instances that Plaintiff refers to where Ideal has supplied steel to an account with an Illinois address are very rare (e.g., only 5 out of 1,193 customers)." (Reply, at 3). We find that these contacts are not sufficiently continuous or systematic to justify the exercise of general personal jurisdiction over Ideal Steel. Indeed, Ideal Steel asserts that it does not maintain any offices

in Illinois, none of its employees reside in Illinois, it is not licensed to do business in Illinois, and it does not advertise or offer goods or services in the state of Illinois. (Venegas Aff. ¶¶ 5-8).

The exercise of specific jurisdiction is limited to claims arising from or related to the defendant's contacts with the forum. *Helicopteros*, 466 U.S. at 414 n.8. The Seventh Circuit has explained that in a breach of contract action, a court may only consider the dealings between the parties with respect to the alleged contract in dispute in assessing these minimum contacts. *RAR*, 107 F.3d at 1278. Therefore, we only look to Ideal Steel's contacts with Illinois which relate to its agreement with Infra-Metals.

Ideal Steel argues its only contact with the forum is that it ordered steel from Infra-Metals at the price quoted to it by Infra-Metals. As discussed above, Infra-Metals responds that Ideal Steel contacted it regularly in Illinois via telephone and mail both to place orders, to dispute and discuss invoices, negotiate credits, and to discuss the execution of lien waivers. (Laudani Aff. ¶ 4). Ideal Steel also acknowledges it submitted payments to Infra-Metals' lock box located in Chicago, Illinois.[1] (Venegas Depo. Exh. 8 ¶ 15). We find that these contacts cannot be characterized as random, attenuated or fortuitous and thus, that it was foreseeable that Ideal Steel could be haled into Illinois court. *See Burger King*, 471 U.S. at 475. Given these interactions, Ideal Steel has established minimum contacts with Illinois sufficient to satisfy federal due process concerns.[2] Thus, Ideal Steel's motion to dismiss for lack

---

[1] Defendant had no other contacts with Illinois that are related to plaintiff's suit. Any other contacts Ideal Steel may have with Illinois are not relevant to the specific jurisdiction analysis. *See RAR*, 107 F.3d at 1277-78.

[2] When a defendant creates "continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Burger King*, 471 U.S. at 476 (quotations and citations omitted); *see also Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 284 (7th Cir. 1990) (determining that personal jurisdiction was warranted where nonresident defendant had a "continuing relationship or obligation" with an Illinois plaintiff). Indeed, because of the parties' relationship over the course of a year, defendant's acceptance of materials from Illinois, and payments sent to Illinois, Ideal Steel has reached into Illinois to derive commercial benefits and thus could reasonably anticipate being

of personal jurisdiction is denied.

## II. Motion to Transfer

Under 28 U.S.C. § 1404(a), a federal district court in which a suit is filed with proper venue may, "[f]or the convenience of the parties and witnesses, in the interest of justice, ... transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Pursuant to 28 U.S.C. § 1391(c), venue is proper in this court because, as discussed above, we have personal jurisdiction over Ideal Steel. Additionally, this case could properly be brought in the district court in the Eastern District of Michigan because Ideal Steel is a Michigan corporation with its principal places of business in Michigan.[3] Therefore, we must determine whether transfer would serve the convenience of the parties, the convenience of the witnesses, and the interest of justice.

In determining whether transfer is appropriate, we must consider the statutory factors (convenience of the parties and witnesses and interest of justice) within the context of the facts of each case. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Id.* Plaintiff's choice of forum is an important consideration, but its choice "will not defeat a well-founded motion to transfer." *Wen Products, Inc. v. Master Leather, Inc.*, 899 F. Supp. 384, 385-86 (N.D. Ill. 1995). Finally, the movant (here, defendant)

---

haled into court in Illinois. Finally, Ideal Steel has not demonstrated that subjecting it to personal jurisdiction would violate "traditional notions of fair play and substantial justice." *See RAR*, 107 F.3d at 1277 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[3] Infra-Metals does not dispute that venue is proper in the Eastern District of Michigan. (Response, at 10). Moreover, although personal jurisdiction over Ideal Steel was a close question for this court, it is undisputed that the federal court in the Eastern District of Michigan has personal jurisdiction over Ideal Steel.

has the burden of establishing that the transferee forum is clearly more convenient. *Coffey*, 796 F.2d at 219-220. We discuss each factor in turn.

### A. Convenience of the Parties

Ideal Steel acknowledges that attending trial will be equally expensive for the parties in either locale because sources of proof are located in both Illinois and Michigan. Infra-Metals argues that it is inappropriate to transfer a case if doing so would merely shift the inconvenience from one party to another. Plaintiff, a Georgia corporation, is "one of the largest suppliers of structural steel in the United States" and operates "multiple distribution centers" including the ones at issue in this case located in Indiana and Illinois. (Compl. ¶ 5). In contrast, Ideal Steel has offices located in Detroit, Howell (which, since the filing of the instant suit has been sold), and Hamburg, Michigan, conducts 99% of its business in Michigan, and has fifty employees. (Venegas Aff. ¶¶ 5, 9; Venegas Depo., at 15-16). Accordingly, although the inconvenience of trying the case in the opposing forum would simply shift the burden from one party to the other, we find this element favors transfer given Infra-Metals' multi-state presence as compared to Ideal Steel's Michigan base.

### B. Convenience of the Witnesses

The appearance of witnesses "is often viewed as 'the most important factor in the transfer analysis.'" *Tingstol Co. v. Rainbow Sales Inc.*, 18 F. Supp.2d 930, 933 (N.D. Ill. 1998) (quoting *Rose v. Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989)); *see also* 15 C. Wright & A. Miller, *Federal Practice and Procedure*, § 3581 (1986 & Supp. 2003). Ideal Steel argues that because the events of which Infra-Metals complains took place in Michigan, most of the witnesses, and all of the most important witnesses, are in Michigan. While plaintiff shipped steel and issued invoices from both Indiana and Illinois, all of Ideal Steel's conduct, and thus witnesses, are in Michigan. According to Ideal

Steel, the business relationship was initiated in Michigan with a Michigan representative of Infra-Metals, all the steel was delivered to Michigan, and the alleged breach occurred in Michigan.

Infra-Metals, on the other hand, contends that all of its witnesses are located in Illinois. It also states that the material events occurred in Illinois: Ideal Steel placed orders for steel in Illinois; the steel was shipped from Illinois; some payments were made to Illinois; and Ideal Steel contacted Infra-Metals' employees to dispute invoices. Ideal Steel asserts, however, that during the course of its relationship with Infra-Metals and since, there has "been significant turnover and several of the employees that had dealt directly with [Infra-Metals] have left the company – some of them involuntarily." (Motion, at 4). Specifically, Ideal Steel represents that one important witness to the case, the former purchasing agent for Ideal Steel, Matthew Gellener, is no longer an employee of Ideal Steel. Given that he was one of the agents who placed the purchase orders from Ideal Steel to Infra-Metals, he would likely need to be compelled to testify at trial. Because it is assumed that witnesses within the control of the parties will appear voluntarily in either locale, the residence of non-party material witnesses is more important to the inquiry. *See FUL, Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311-12 (N.D. Ill. 1993). Ideal Steel explains that the dispute in this case will likely turn on the substance of the communications between Infra-Metals and former employees of Ideal Steel. (Motion, at 4). Therefore, Ideal Steel contends that the ability to compel the former agents and other third-party witnesses is essential to its defense. As such, this testimony from former employees who interacted with Infra-Metals should not be foreclosed by maintaining this action in Illinois where these witnesses are not subject to compulsory process. The apparent importance of the testimony of non-party witnesses located in Michigan and this court's desire to insure, when possible, the live presence of material non-party witnesses at trial provides a strong justification for transfer.

### C. Interest of Justice

The interest of justice factor relates to the efficient functioning of the courts. *Coffey*, 796 F.2d at 221. Interests of justice include such considerations as ensuring a speedy trial, trying related litigation together, and having a judge who is familiar with the applicable state law. *Id.* The availability of compulsory process over witnesses who are material "weighs heavily in this analysis." *FUL, Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993).

Infra-Metals argues that this case might be disposed of more quickly if it remains in this judicial district. Infra-Metals points to the 2002 federal court management statistics of the Administrative Office of the United States Courts which indicate that the median number of months from filing to disposition for a civil case was 5.5 months in this district as compared to 9.4 months in the Eastern District of Michigan. The 2003 statistics are similar, although the median number for the Eastern District of Michigan has increased to 9.7 months. The median time it takes for a civil case to proceed from filing to trial also is shorter in the Northern District of Illinois. *See* 2003 Federal Court Management Statistics – District Court. However, these statistics alone do not portray a full picture of the comparative work loads of the two courts. For example, we observe that in recent years judges of the Eastern District of Michigan have volunteered to visit the Northern District of Illinois to help with the case load in the busy Chicago metropolitan federal court.

Infra-Metals also argues that having a judge who is familiar with Illinois case law favors venue in this district because Infra-Metals filed this action under Illinois law. We find this argument less persuasive than other considerations especially because this case involves basic breach of contract and quantum meruit claims that we are confident any federal judge can properly and easily adjudicate. Finally, Infra-Metals fails to acknowledge that the Michigan court has the power to compel attendance and resolve potential discovery disputes arising from third-party witnesses because the witnesses are

11

within the subpoena power of the Michigan court. *See FUL, Inc.*, 839 F. Supp. at 1312. As discussed above, Ideal Steel has represented that Matthew Gellener and other former employees who dealt with Infra-Metals on behalf of Ideal Steel and whose testimony is crucial to this contract dispute, reside in Michigan, outside the subpoena power of this court, but within the subpoena power of the Eastern District of Michigan. We find this factor outweighs the possibility of a slightly shorter case processing time in Illinois.

Given all of the above, we conclude that a transfer of this case to the Eastern District of Michigan will best serve the interests of justice and would be most convenient for the witnesses and parties. Consequently, Ideal Steel's motion to transfer pursuant to 28 U.S.C. § 1404(a) is granted.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss for lack of personal jurisdiction is denied. Its motion to transfer this action to the Eastern District of Michigan is granted.

It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 1/20/04